[L. A. No. 26934. In Bank. Dec. 18, 1962.]

FRANK J. WATERS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HUGHES TOOL COMPANY, Real Party in Interest.

Crowley & Rhoden, Arthur J. Crowley and Philip C. Griffin for Petitioner.

No appearance for Respondent.

Bautzer & Grant and Herbert Schwab for Real Party in Interest.

TOBRINER, J.—Applying the liberality of construction which we believe to be appropriate to discovery procedures,

we hold here that plaintiff has sufficiently shown "good cause" to entitle him to an order pursuant to Code of Civil Procedure section 2019, subdivision (a)(3) to take the deposition of an unserved defendant and certain witnesses. On the other hand, for reasons hereinafter stated, we do not believe that plaintiff has presently submitted an adequate showing pursuant to Code of Civil Procedure section 2019, subdivision (a)(4) to take the deposition of the unserved defendant as managing agent of the corporate defendant or as a person for whose immediate benefit the action was being defended.

On December 29, 1961, Frank J. Waters, a member of the bar of this state, filed his complaint against Howard Hughes, Hughes Tool Company, a corporation, Hughes Aircraft Company, a corporation, and Howard Hughes Medical Institute, a corporation, to recover $1,094,250 as fees for professional services. The complaint alleges that plaintiff rendered services during the years 1957, 1958, 1959 and 1960, and that the indebtedness "was incurred by Howard Hughes, individually, and by each of the remaining defendants." It also alleges, in substance, that Hughes Tool Company is the *alter ego* of Hughes, that it is insolvent, and that "an injustice will result if the corporate veil is not lifted and if defendant Howard Hughes is not held personally liable for the debts and acts of the said corporation herein complained of."

Served only on Hughes Tool Company on January 23, 1962, the original summons was returned to the court on February 21. As of the date of the orders in question, no alias summons had been issued directed to Howard Hughes or the other corporate defendants, and none of them had appeared in the action. The actions against Hughes Aircraft and Howard Hughes Medical Institute have now been dismissed.

On February 15, 1962, Waters served on Hughes Tool Company a notice that the deposition of Hughes would be taken on February 28. In opposition, Hughes Tool Company on February 19 served Waters with notice of a motion for an order that the deposition of Hughes not be taken on the stated ground "other defendants in the action" had not been served with summons, "and no order of court" had been obtained to take the deposition. Waters, then, on February 21, sought and obtained an ex parte order to take the deposition of Hughes without notice to the defendants who had not been served with summons.

Two days later the court on its own motion vacated that ex parte order on the basis that Waters had obtained it by

"knowingly and deliberately" failing to disclose to the court that he had already served the notice to take Hughes' deposition and had been served with a notice of motion for a protective order.

In addition to the above motion for a protective order, Hughes Tool Company noticed another motion for a further protective order on the ground that Hughes is not "an officer, director or managing agent" of Hughes Tool Company, and is not "a person for whose immediate benefit" the action is defended within the meaning of Code of Civil Procedure section 2019, subdivision (a)(4).

On February 23, Waters reapplied for an order to take Hughes' deposition pursuant to section 2019, subdivision (a)(3), and, for the first time, applied for a similar order to take the depositions of Robert Maheu, Richard Nixon, Norris Poulson, William Gay, Gregson Bautzer and Lee Murrin. Following his earlier procedure with Hughes, Waters served notice of the taking of the depositions of these persons prior to application pursuant to section 2019, subdivision (a)(3) for leave of court to do so. The court denied both motions.

Petitioner seeks a writ of mandate to set aside the order. Since the petition presents several important questions regarding the procedure for the taking of depositions in these circumstances, we believe the writ provides a proper vehicle to review the orders of the trial court. (See *Oceanside Union School Dist.* v. *Superior Court, ante,* pp. 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].)

We turn to the problems which the case presents: (1) did the trial court abuse its discretion in rejecting plaintiff's attempted showing of good cause under Code of Civil Procedure section 2019, subdivision (a)(3) for an authorization for taking the depositions without giving notice to parties who had not been served with summons; (2) did the court err in holding under Code of Civil Procedure section 2019, subdivision (a)(4) that Howard Hughes was neither a "managing agent" of Hughes Tool Company nor "a person for whose immediate benefit" the within action was being defended, in that service upon such deponent was not required?

Two code sections pertain to the first issue. Code of Civil Procedure section 2016, subdivision (a) provides that after the service of summons any party may take the deposition of any person at any time, but stipulates that if the notice of the taking of the deposition is served within 20 days after service of the summons the plaintiff must obtain leave of court, upon

good cause, to take the deposition. ▮▮ The second section involved, Code of Civil Procedure section 2019, subdivision (a)(3), sets forth that for good cause shown, the court may authorize the taking of a deposition without the giving of notice to parties who have not been served with summons. The section thus limits the scope of Code of Civil Procedure section 2019, subdivision (a)(1) which requires that a party desiring to take the deposition of any person "shall give notice in writing to every other party to the action."

We first briefly note the historical background of the sections. As originally proposed, section 2016, subdivision (a), corresponding to federal rule 26,[1] differed from the federal rule in that the second sentence of the federal rule, i.e., "*After commencement of the action* the deposition may be taken without leave of court, except that leave, granted with or without notice, must be obtained if notice of the taking is served by the plaintiff within 20 days after commencement of the action," was replaced by "Such depositions may be taken in an action at any time *after the service of the summons* or the appearance of the defendant, and in a special proceeding after a question of fact has arisen therein." (Emphasis added.) The Committee on Administration of Justice has explained that it sought the proposed change in order to retain the existing California practice, which it considered preferable to the federal practice. (See 31 State Bar J. 213.) The Legislature, however, included substantially both sentences in section 2016, subdivision (a). ▮▮ Nevertheless, since an action is commenced by filing a complaint (Code Civ. Proc., § 350), the words "any time after the service of the summons" specify a more restrictive limitation than "after commencement of the action." Consequently, the earliest time a party can take a deposition is "after the service of the summons." The section additionally constrained the plaintiff by the requirement that he obtain leave of court to serve notice of the taking of the deposition within 20 days after service of the summons on "the defendant."

In multi-defendant cases the Committee on Administration of Justice framed a provision for the taking of depositions

---

[1]Rule 26 provides in part: "Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. After commencement of the action the deposition may be taken without leave of court, except that leave, granted with or without notice, must be obtained if notice of the taking is served by the plaintiff within 20 days after commencement of the action. . . ."

by leave of court, upon good cause, so that a plaintiff would not be foreclosed from obtaining any depositions until all defendants had been served. The committee proposed the 1959 amendment to section 2019, subdivision (a)(3)[2] "to empower the court to permit the taking of a deposition when a co-party has not been served with summons." (33 State Bar J. 391.) The committee properly feared that sections 2016, subdivision (a) and 2019, subdivision (a)(1) would forbid the taking of a deposition unless all parties to the action had been served with summons and notice of the taking of the deposition and hence added the enabling provision. (*Ibid.*)

■ Our first problem is to determine whether the 20-day provision under section 2016, subdivision (a) runs from the date when *any one defendant* has been served or from the date when *all defendants* have been served. As we shall point out, we believe service upon any one defendant suffices for the running of the 20-day provision.

While it is true that this construction deprives the unserved defendant of the opportunity to prepare his defense during the 20-day period, we believe that a contrary interpretation would penalize a plaintiff who, because of circumstances beyond his control, could not effect service upon all defendants. Moreover, as we shall explain in discussing section 2019, subdivision (a)(3) the unserved defendant will in any event be protected by notification of the taking of such deposition except in those cases in which the court excuses notice upon a showing of good cause.

We recognize that the fundamental purpose of the 20-day postponement is to afford the defendant time to obtain counsel and inform himself of the nature of the suit. (*Westerman* v. *Grow* (S.D.N.Y. 1961) 198 F.Supp. 309.) If the 20-day waiting period commences to run after service on any one of the named defendants, the unserved defendant suffers a resultant deprivation of that period for preparation. As a practical matter, the 20-day rule also gives the unserved defendant an opportunity, prior to plaintiff, to take the depositions of witnesses. Although this priority does not appear to have motivated the 20-day rule, the federal courts have upheld the defendant's right to obtain such priority. (See *Dow Chemical Co.* v. *Stauffer Chemical Co.* (D. Del. 1960) 26 F.R.D. 179;

---

[2] ". . . [A]nd in any case on motion of any party, with or without notice, and for good cause shown, the court may authorize the taking of a deposition without the giving of notice to parties who have not been served with summons."

*Netter* v. *Ashland Paper Mills, Inc.* (S.D.N.Y. 1956) 19 F.R.D. 529; *Caribbean Constr. Corp.* v. *Kennedy Van Saun Mfg. & Eng. Corp.* (S.D.N.Y. 1952) 13 F.R.D. 124.) Again, if plaintiff can at his option serve notice of the taking of depositions 20 days after service on any one of the defendants, the remaining unserved defendants lose such priorities.

Despite these considerations, however, we have concluded that a rigid requirement of service upon all defendants to start the running of the 20-day period would unduly impede plaintiff in discovery proceedings. Plaintiff may be unable to obtain service upon all the defendants; he may not in fact know the names of all the defendants. To require the plaintiff thus frustrated to obtain leave of court in order to get relief imposes upon him an additional court proceeding and further burdens congested court calendars. Finally, section 2019, subdivision (b)(1) makes available to the unserved defendant the opportunity to procure, if necessary, a protective order.

Having determined that section 2016, subdivision (a) does not postulate service upon all defendants as a prerequisite to a right to obtain a deposition within the 20-day period, we conclude that the section did not bar plaintiff's attempt here to secure Hughes' deposition. Plaintiff effected service upon Hughes Tool Company more than 20 days prior to the service of the notice to take the deposition.

Turning now to section 2019, subdivision (a)(1), we have noted that the section requires that notice of the taking of a deposition be given to all other parties to an action. For good cause shown, however, the court may authorize the taking of a deposition without rendition of notice to parties who have not been served with summons. (§ 2019, subdivision (a)(3).) ▮ The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground for the sought order. The good cause may be equated to a good reason for a party's failure to perform that specific requirement from which he seeks to be excused.

▮ Turning to section 2019, subdivision (a)(3) the good cause there required must relate to the reason for not giving notice of the depositions to such unserved defendants. If the unserved defendant does not receive notice of the very proceedings as to which he may require a protective order, the right to obtain such protective order becomes illusory; the protection of the 20-day postponement designed by section 2016, subdivision (a) is lost. Hence, plaintiff's showing of good cause should adduce a reasonable and persuasive ground for

not proceeding with the comparatively simple requirement of sending to the unserved defendants notice of the taking of the depositions.

In the case before us the action against defendants Hughes Aircraft Company and Howard Hughes Medical Institute has been dismissed; hence the question of showing of good cause with respect to these unserved defendants is now moot. Defendant Hughes Tool Company, the movant for the protective order, has not alleged that it will in any way be prejudiced by the taking of the depositions; nor has that company any standing to assert any alleged rights of defendant Howard Hughes in his personal capacity that might thereby be affected.

█ Plaintiff has shown good cause for not sending to the unserved Hughes notice of the taking of the depositions of the various desired deponents in the instant case. Plaintiff attests that his reason for not serving Hughes lies in the vexation and delay that such service would entail. The gist of the affidavit of Waters' attorney is that past experience has proven that service upon Hughes must be a difficult and prolonged affair.[3] Plaintiff presents a reasonable ground for not giving to the unserved defendant the notice of the taking of the depositions when plaintiff shows that such defendant avoids service. █ As we said in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]; "It follows that the good cause which must be shown should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent rights of the adversary." (P. 388.) We find difficulty in conceiving of the "abuse of the inherent rights of the adversary" here who allegedly barricades himself behind obstacles to the service of process. (See *Suezaki* v. *Superior Court* (1962) *ante,* pp. 166, 171 [23 Cal.Rptr. 368, 373 P.2d 432].)

We conclude that plaintiff has shown good cause for relief

---

[3] The affidavit of Waters' attorney states: "(1) Defendant Howard Hughes, individually, has not been served for the reason that counsel for plaintiff, in prior actions against said defendant, has experienced great expense and vexation in attempts to obtain service upon said defendant. In prior Superior Court actions entitled *Noach Dietrich,* Plaintiff, vs. *Howard Hughes, et al.,* Defendants, Superior Court No. 720,814, and *James J. Arditto,* Plaintiff, vs. *Howard Hughes, et al.,* Defendants, Superior Court No. 761,233, actions in which counsel for plaintiff herein were also counsel for plaintiffs therein, weeks were spent in attempting to effectuate personal service upon the said Howard Hughes. It is the intention of plaintiff that the said Howard Hughes will be personally served at the time and place of the deposition. . . ."

from sending notice of the taking of the depositions to Hughes; we turn to the final phase of plaintiff's right to the depositions under section 2019, subdivision (a)(3). This aspect of the instant subject involves two conflicting procedural contentions of the parties.

Plaintiff attacks the trial court's vacation of its ex parte order of February 21 permitting the taking of the deposition; correlatively defendant Hughes Tool Company questions plaintiff's conduct in serving notice of the taking of Hughes' and other depositions prior to obtaining the leave of court to do so. As to the first matter the court was certainly empowered to vacate its first order (Code Civ. Proc., § 937).

As to the second matter, the service of the notice of the taking of the depositions prior to the court's grant of leave to do so does not necessarily violate the statutory procedure. Subsection 2019, subdivision (a)(3) does not say the court order must *first* be obtained and the notice thereafter sent. While the section, of course, requires the procurement of an order before the actual taking of the deposition, the sequence in serving the notices and obtaining the order is not vital. The service of the notice prior to the order only gives the deponent earlier advice of the taking of the depositions; such notice cannot be prejudicial.

Having explained why we believe plaintiff adduced "good cause" to obtain authorization for taking the depositions without notice to Hughes and why the procedural sequence did not destroy that right, we now set forth our reasons for concluding that the trial court did not abuse its discretion in holding that plaintiff did not presently offer a sufficient showing to procure Hughes' deposition under Code of Civil Procedure section 2019, subdivision (a)(4).

Section 2019, subdivision (a)(4) provides that the service of a subpoena is not required upon any deponent who is an officer, director or managing agent of a party to the record or a person for whose immediate benefit an action is prosecuted or defended. Originally part of section 2019, subdivision (a)(1), the provision was designed to be a codification of the federal practice. (31 State Bar J. 221.) Under the federal practice the only deponents not subject to subpoena are those persons who, failing to appear after notice, are amenable to sanctions under rule 37. Such persons include "a party or an officer or managing agent of a party." (See *Campbell* v. *General Motors Corp.* (S.D.N.Y. 1952) 13 F.R.D. 331.)

Federal decisions have defined the "managing agent" as used in federal rule 37(d), although the similar term in the California act has not as yet been interpreted by our courts. ▇▇▇ The question whether a particular deponent is a "managing agent" of one of the parties for purposes of pretrial discovery proceedings must of necessity be answered pragmatically on an *ad hoc* basis. (See *United States* v. *The Dorothy McAllister* (S.D.N.Y. 1959) 24 F.R.D. 316, 318.) ▇▇▇ In general the managing agent of a corporation is a person who may exercise his judgment and discretion in dealing with corporate matters, who can be expected to comply with his employer's directive to appear for pretrial examination, and who can be anticipated to identify himself with the interests of the corporation. (See e.g., *Proseus* v. *Anchor Line, Ltd.* (S.D.N.Y. 1960) 26 F.R.D. 165; *Rubin* v. *General Tire & Rubber Co.* (S.D.N.Y. 1955) 18 F.R.D. 51; *Krauss* v. *Erie R. Co.* (S.D.N.Y. 1954) 16 F.R.D. 126.)

▇▇▇ While we see no reason why the sole shareholder of a corporation under the appropriate circumstances cannot qualify as a "managing agent" of his corporation, although he is not officially designated as such, the trial court held that Waters' affidavit in opposition to motions for protective orders failed to adduce a sufficient showing that Hughes was such a managing agent. The affidavit alleges that (1) Hughes is the sole stockholder of Hughes Tool Company, (2) Hughes manages all the affairs of Hughes Tool Company, (3) Hughes has on many occasions summoned to his residence various enumerated key officers, directors, and attorneys for the Hughes Tool Company, and kept these men waiting for as long as 10 days to see him, (4) these key officers and attorneys have on occasion stated that Hughes Tool Company is subject to the sole control of Howard Hughes, (5) on various occasions since December 21, 1960, Hughes has given Waters personal directions as to legal services to be performed for Hughes Tool Company and has made it clear to Waters in personal conversations that he [Hughes] was in sole charge of the operations and decisions of the Hughes Tool Company. Some of these averments set forth only generalizations and conclusions. ▇▇▇ Based upon the affidavit the trial court was required to make its determination whether the averments sufficiently established Hughes as a managing agent. This question was an issue of fact. We cannot hold as a matter of law that the affidavit made the necessary showing; we cannot hold that the

trial court in finding the affidavit insufficient abused its discretion.

The phrase "a person for whose immediate benefit an action or proceeding is prosecuted or defended" has no precedent in the Federal Rules of Civil Procedure, but does appear in several California statutes. It is found in Code of Civil Procedure, section 2016, subdivision (d)(2) which allows a deposition of a party and his representatives to be used for any purpose. Section 2016, subdivision (d)(2) specifies the same representatives as those who are subject to cross-examination under Code of Civil Procedure, section 2055. In addition to inclusion in section 2055, the phrase occurs in subdivision (1) of former Code of Civil Procedure section 2021 based upon Practice Act, section 428-1st (Stats. 1851, ch. 5, § 425, p. 118) which provided that the deposition of a witness could be taken when the witness was a party to the action or a person for whose immediate benefit the action or proceeding is prosecuted or defended. The phrase also appeared in Practice Act sections 392 (1854), 393 (1863) and 422 (1861).

The above sections were concerned with the competency as witnesses of parties or "persons for whose immediate benefit the action is prosecuted or defended," and were derived from New York Code sections 396 and 399 (1849), the New York version of Lord Denman's Act (6 and 7 Vict., ch. 85, § 1). In this context the phrase "person for whose immediate benefit an action is prosecuted" has been held to mean a person who would have an immediate right to the amount recovered or some portion of it as soon as it was recovered by the nominal plaintiff. (See *Butler* v. *Patterson* (1855) 13 N.Y. (3 Kern.) 292. Accord, *Voss* v. *Metropolitan Cas. Ins. Co.* (1954) 266 Wis. 150 [63 N.W.2d 96] ; *Employers Mut. Liability Ins. Co.* v. *Icke* (1937) 225 Wis. 304 [274 N.W. 283] ; *Freeman* v. *Jergins* (1954) 125 Cal.App.2d 536, 559 [271 P.2d 210].)

Similarly in an action defended for the immediate benefit of a person, the liability must be immediate and direct. (Cf. *Fitch* v. *Bates* (1851) 11 Barb. (N.Y.) 471, 480-481.) The courts have held that a stockbroker is not a person for whose immediate benefit an action is prosecuted. (*Montgomery County Bank* v. *Marsh* (1852) 7 N.Y. (3 Seld.) 481; *Washington Bank of Westerly* v. *Palmer* (1850) 4 N.Y.Super. (2 Sandf.) 686.) The liability of a shareholder or a shareholder's right to corporate funds does not become direct merely because he is the sole shareholder. On the other hand, in a situation in which the corporation acts as the

*alter ego* of its sole shareholder, the corporate entity may be disregarded and the shareholder treated as the person for whose immediate benefit the action is prosecuted or defended.

As we have stated with regard to the procedure as to managing agent, the trial court must, as to the instant issue, determine from the showing made to it whether the action is being prosecuted or defended for the immediate benefit of the person whose deposition is sought. The fact that Hughes is the sole stockholder does not in itself suffice to show that Hughes Tool Company is the *alter ego* of Howard Hughes. Again, we cannot hold that the trial court abused its discretion in denying the motion. Nothing we have said here, of course, should adversely affect plaintiff's right to obtain Hughes' deposition under section 2019, subdivision (a)(4) upon presentation of further and adequate attestations which meet the above requirements.

We reach this final result: since plaintiff noticed the taking of the depositions more than 20 days after service of summons upon defendant Hughes Tool Company and since the 20-day postponement of section 2016 runs from the date of service of any one defendant rather than all defendants, that section does not bar plaintiff from taking the depositions. Further, plaintiff has shown good cause for not giving to the unserved defendant Howard Hughes notice of taking the deposition of Hughes and the other parties; plaintiff's affidavit establishes that Hughes has made service upon him difficult and prolonged. Finally, we cannot hold that the trial court abused its discretion in concluding that plaintiff's submitted affidavits did not make an adequate showing pursuant to Code of Civil Procedure section 2019, subdivision (a)(4) that Hughes was the managing agent of the served Hughes Tool Company or was a person for whose immediate benefit the present action was being defended.

It is ordered that a peremptory writ of mandate issue requiring the trial court to set aside its previous orders and allow plaintiff to move for new and further orders consistent with this opinion.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.