[Civ. No. 25889. Third Dist. Feb. 4, 1987.]

LARRY SABADO et al., Cross-complainants and Respondents, v.
DANNY MORAGA, as Fish and Game Warden, etc., et al., Cross-
defendants and Respondents;
WILLIAM A. SCHUCKMAN, Real Party in Interest and Appellant.

---

**COUNSEL**

William A. Schuckman, in pro. per., and Van Dyke, Schuckman & Van Dyke for Real Party in Interest and Appellant.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Walter E. Wunderlich and Harold L. Eisenberg, Deputy Attorneys General, for Cross-defendants and Respondents.

---

**OPINION**

**ACKLEY, J.\***—Real Party in Interest William Schuckman appeals an order imposing $1,275 in sanctions against him pursuant to Code of Civil Procedure section 128.5[1] for his actions at the deposition of a witness he did not represent. We reverse the judgment (order).

### FACTS AND PROCEDURAL BACKGROUND

The State of California filed a suit for civil penalties and an injunction against Larry Sabado and Bob Regpala, dba Martini's Bait Shop, for alleged violations of the Business and Professions Code and the Fish and Game Code.[2] Sabado and Regpala cross-complained in their individual capacities

---

\*Assigned by the Chairperson of the Judicial Council.

[1] All future statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The action, filed by the San Joaquin County District Attorney's office, alleged that contraband sport fish were being bought and sold at their business.

against the State of California, Department of Fish and Game, and two Fish and Game wardens alleging civil rights violations (42 U.S.C. § 1983).[3] Real party in interest William Schuckman is counsel for Regpala in the civil rights action.

Deputy Attorney General Harold Eisenberg, representing the State of California, prepared a notice of taking deposition of cross-complainant Regpala and request for production of documents. The deposition was twice rescheduled at Attorney Schuckman's request. On the day the deposition was finally taken, Regpala failed to bring a number of the requested documents. After approximately two hours and 15 minutes of examination, Schuckman directed his client not to answer a question put to him by the Attorney General. After a heated discussion between the attorneys, Schuckman and his client left the deposition.

Eisenberg filed a motion pursuant to section 2034 for an order compelling resumption of the deposition and production of documents, and granting attorneys fees and expenses incurred in the motion. The motion was heard in San Joaquin County Superior Court by Judge Nels Fransen. The court ordered Regpala to answer the challenged question and to pay $100 in sanctions for terminating the deposition; the payment was stayed until commencement of trial or dismissal. The parties agreed to the date of a further deposition. No further information regarding that deposition appears in the record.

Eisenberg subsequently served Regpala's wife with notice of taking her deposition and a civil subpoena. Schuckman was also given notice of the scheduled deposition. On the date of the deposition, Eisenberg inquired of Schuckman whether he represented Ms. Regpala in the proceedings; Schuckman responded in the negative. No other attorney was present to represent Ms. Regpala. Eisenberg requested that the reporter swear in Ms. Regpala as a witness. The following then transpired:

"THE REPORTER: Would you like to raise your right hand, please.

"MR. SCHUCKMAN: I will tell you that you do not have to be called as a witness. You have a privilege not to be called as a witness, which means not even to be sworn in. It is not your husband's privilege and I cannot exercise it on his behalf. It is your privilege for you to exercise it, if you want to exercise it or not.

---

[3]The cross-complaint alleged cross-defendants published false and misleading statements that Sabado and Regpala were guilty of civil and criminal misconduct and that, as a result, they "suffered personal humiliation and [have] been unable to continue to expand their business operations . . . ."

"THE WITNESS: What do I say then?

"MR. SCHUCKMAN: Say you don't want to be called.

"MR. TAYLOR: Excuse me, Counsel, do you have any authority for that?

"MR. SCHUCKMAN: Yeah, 971, Evidence Code 971.[4]

"MR. EISENBERG: And what does Evidence Code 971 say, Counsel?

"MR. SCHUCKMAN: It says, 'Except as otherwise provided by statute'—

"THE REPORTER: Excuse me, Bill, slow down a little bit.

"MR. SCHUCKMAN: 'Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section, unless the party calling the spouse does so in good faith without knowledge of the marital relationship.'

"MR. EISENBERG: Are you advising—

"MR. SCHUCKMAN: I am not advising her or anything.

"MR. EISENBERG: Are you advising the deponent, whom you do not represent, not to be sworn in and answer questions at this deposition this morning?

---

[4]Evidence Code section 971 provides as follows: "*Privilege not to be called as a witness against spouse.* Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section unless the party calling the spouse does so in good faith without knowledge of the marital relationship." (Stats. 1965, ch. 299, § 2.)"

Since neither party has raised the point upon this appeal we simply note in passing that the privilege alluded to, if here applicable, was more properly that under Evidence Code section 970 which sets forth the privilege of a spouse not to testify against the other spouse. Evidence Code section 971 adds the additional privilege "... not to be called as a witness by an adverse party ..." in a proceeding where the spouse of the witness is a party. The purpose of section 971 is to avoid the prejudicial effect of requiring a spouse to claim the privilege not to testify in front of the trier of fact, which is a situation not involved upon the taking of a deposition. (See Law Revision Com. accompanying Evid. Code, § 971.) We deal only with the matters before us, as have both counsel. Counsel place the issue on the ground of whether or not it is clearly settled law that the privilege has no application because the husband's cross-complaint involves "... a civil proceeding brought ... by a married person for the immediate benefit of his spouse or of himself and his spouse," thus, falling within the provisions of Evidence Code section 973, subdivision (b), providing for no privilege in such instance.

"MR. SCHUCKMAN: A proceeding is defined in section 901 as any action, hearing, investigation, inquest or inquiry, whether conducted by a Court, Administrative Agency Hearing Officer, Arbitrator, Legislative body or any other—

"THE REPORTER: Bill, Administrative Agency Officer—

"MR. SCHUCKMAN: Hearing Officer, Arbitrator, Legislative body or any other person authorized by law in which pursuant to law testimony can be compelled to be given. [¶] I think this is a hearing in which testimony cannot be compelled to be given.

"MR. EISENBERG: Ms. Repala, on the advice of Counsel—

"THE WITNESS: Regpala.

"MR. SCHUCKMAN: Regpala.

"MR. EISENBERG: Are you—

"MR. SCHUCKMAN: Regpala.

"MR. EISENBERG: —refusing to be sworn in to take your deposition this morning? [Overlapping comments.]

"MR. SCHUCKMAN: Objection, compound question.

"MR. EISENBERG: Are you refusing to be sworn to take your deposition this morning?

"THE WITNESS: If I have that right I guess I am.

"MR. EISENBERG: Do you under—

"THE WITNESS: Until I talk with my husband. He didn't know this either.

"MR. EISENBERG: If you refuse to be sworn in this morning I am going to cite you into court and you are going to have to explain— [Overlapping comments.]

"MR. SCHUCKMAN: Oh, let's not threaten her.

"MR. EISENBERG: Mr. Schuckman, would you please be quiet and let me finish and you may say whatever you want to say for the record.

"MR. SCHUCKMAN: I am not going to let you — [Overlapping comments.]

"MR. EISENBERG: You said for the record that you don't represent this woman.

"MR. SCHUCKMAN: Yeah, but why do you have to threaten the witness?

"MR. EISENBERG: Ms. Regpala, are you refusing to be sworn in on the advice of Mr. Schuckman?

"MR. SCHUCKMAN: The same compound question.

"MR EISENBERG: I need your answer. [Overlapping comment, not understandable.]

"MR. EISENBERG: He cannot advise you—

"MR. SCHUCKMAN: You know that it is a trick question, Counsel.

"THE WITNESS: I refuse to answer.

"MR EISENBERG: You refuse to answer that question, okay. Do you refuse to answer any questions today?

"THE WITNESS: Yes, I do."

Without an effort to comply with California Rules of Court, rule 339, the Attorney General then moved the trial court by noticed motion for certain orders. He asked the court: (1) To find Ms. Regpala in contempt; (2) to compel resumption of the deposition; (3) to compel Ms. Regpala to answer questions at the resumed deposition; and (4) for reasonable attorney's fees and expenses (sanctions) pursuant to Code of Civil Procedure section 128.5.

The motion was heard by Judge John Cruikshank. At the hearing, the court stated it did not find Ms. Regpala in contempt.[5] The court refused to decide whether Ms. Regpala could validly interpose the marital privilege; however, it ordered her to appear at a deposition scheduled for February 3, 1986. The court asserted that she could "go see a lawyer and get some advice on [the privilege]." The court expressed its intent, however, to impose sanctions against Schuckman. Schuckman requested that the court specify the reason for the sanctions. The court orally responded that it "finds that in the

[5]At oral argument upon appeal it was stated that the contempt was in fact dismissed by the moving party without evidence or hearing at the time of the motion.

attempted deposition of the witness ... Stella Regpala on December 18, 1985, that Mr. Schuckman willfully prevented the deposition from proceeding." The written order reiterated the reason for sanctions expressed by the court at the hearing and added that the supporting declarations for the motion reflected that "cross-defendants have had continued difficulty in obtaining timely discovery ... due to the actions of attorney William A. Schuckman." Schuckman appeals from the order imposing sanctions.[6]

## DISCUSSION

Code of Civil Procedure section 128.5 provides that the trial court may order a party and/or the party's attorney "to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."[7] That section was enacted in 1981 "to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions ...." (Stats. 1981, ch. 762, § 2.)

The trial court imposed sanctions in this case on the ground that Schuckman's actions at the deposition "caused unnecessary delay in legitimate discovery being able to proceed in a timely and orderly manner." Because the trial court did not reach the question of whether or not Ms. Regpala could validly assert the marital privilege,[8] it is at once apparent that the imposition of sanctions was not predicated on the propriety of counsel's advice. There was no ruling on the claim that counsel's assertion of the applicability of the privilege was "frivolous." Thus, the sanctions imposed are unsupportable on that ground. Rather, the court imposed sanctions because the information relating to the deponent's alleged legal rights came from an attorney who did not represent her.[9] According to the trial court, by giving advice to an

---

[6]Schuckman contends on appeal: (1) Ms. Regpala had a valid marital privilege not to testify; (2) insufficient evidence supported the finding that he advised Ms. Regpala not to testify; (3) sanctions were improperly imposed; and (4) assuming the propriety of sanctions, they were improperly calculated.

[7]"Frivolous" is defined as "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).)

[8]Neither party challenges the trial court's refusal to reach the marital privilege issue. Although the motion requested an order that Ms. Regpala be directed to answer questions at the deposition and the points and authorities in support of and in opposition to the motion addressed the merits of the issue, the court asserted the issue was not before it. It appears that the court's conclusion was based on a determination that Ms. Regpala had never clearly asserted the marital privilege. The record reveals that she merely stated that she was refusing to be sworn in until she could talk to her husband. It also appears that the court did not wish to rule on the issue because Ms. Regpala was still unrepresented at the hearing on the motion.

The court ordered that Ms. Regpala appear at a deposition scheduled for February 3, 1986. Presumably, then the issue of her ability to assert the marital privilege has been resolved. We intimate no view in that regard.

[9]No claim has been made that representation of Ms. Regpala by Schuckman would have created any conflict of interest.

unrepresented witness, Schuckman "willfully prevented the deposition from proceeding."

■ We find that this is not a proper basis for imposing sanctions under section 128.5. An attorney who, while acting presumably in the best interest of his own client, offers gratuitous information to an unrepresented witness of possible legal rights should not have to fear punishment if the witness chooses to exercise those rights. The best interests of our judicial system are not served by keeping our uninformed citizens in the dark. The instant facts present an even stronger situation for the intervention of counselor Schuckman on behalf of his client inasmuch as he was representing the husband of the witness. Although sanctions may be appropriate if an attorney offers meritless legal advice to a witness which results in a delay in the proceedings, no determination of the appropriateness of the advice was made here.

The crux of respondents' argument is that the claimed privilege is manifestly inapposite because the cross-complaint is an action prosecuted for the "immediate benefit" of Ms. Regpala as the spouse of the cross-complainant. Thus, as respondents view the matter, the exception to the privilege contained in Evidence Code section 973, subdivision (b) for "a civil proceeding brought . . . by a married person for the immediate benefit of his spouse or of himself and his spouse" applies.

The cross-complaint upon which respondents predicate their position was filed by the husband of the witness and Larry Sabado. It is entitled CROSS-COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) and seeks relief for alleged entrapment and alleged publication of false and misleading statements and information (defamation).

We do not here rule on the validity or invalidity of the claimed privilege because that problem is not before us. We do find that Attorney Schuckman's assertion that the privilege is applicable cannot on this record be said to have been made in bad faith only to delay the proceedings upon the deposition of his client's wife. Counsel Schuckman has cited *Duggan* v. *Superior Court* (1981) 127 Cal.App.3d 267 [179 Cal.Rptr. 410] in support of his advancement of the privilege urging that the cross-complaint below is not for the "immediate benefit" of Ms. Regpala but is partnership property not belonging to the marital community. Respondents counter that argument by asserting that this court's decision in *Hand* v. *Superior Court* (1982) 134 Cal.App.3d 436 [184 Cal.Rptr. 588] has settled the matter completely and there is no privilege.

*Hand, supra,* did not involve the Civil Rights Act. *Hand* did not involve either the tort of entrapment or the tort of defamation nor the character of

the property of any resultant damage award from the act or either tort. That case was a medical malpractice action in which plaintiff Boles sued opthalmologist Hand for medical negligence. We held that Ms. Boles had no marital privilege not to testify because the action was brought for her "immediate benefit." In so holding we carefully traced the history of "personal injury damages" to their then current status under the community property laws of California. The precise question of whether or not the privilege afforded by either Evidence Code section 970 or 973 applies under the present facts or rather the exception under section 973, subdivision (b) has not yet been decided in his state. Regardless of what an appellate tribunal may eventually hold in that respect, we find that Attorney Schuckman's urging that the privilege did apply to the spouse of his client cannot be said to have been totally without merit.

We find that the trial court abused its discretion in imposing sanctions on the ground that Schuckman's offering of legal information to a deponent he did not represent caused unnecessary delay. (Compare *Karwasky* v. *Zachan* (1983) 146 Cal.App.3d 679 [194 Cal.Rptr. 292] [sanctions proper where attorney made frivolous motion without basis in law]; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642 [192 Cal.Rptr. 57] [attorney's refusal to stipulate as to sole issue raised by demurrer was dilatory, frivolous act done without good faith]; see also *Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664 [213 Cal.Rptr. 654] [attorney's conduct in filing motion to quash for lack of personal jurisdiction of corporate client and subsequent withdrawal of motion after discovery of information not the type to warrant sanctions under section 128.5].)

We next address the Attorney General's contention that the sanctions are justified on the ground that Schuckman's conduct *throughout the discovery process,* not just at Ms. Regpala's deposition, was designed to cause delay. The written order awarding attorney fees as sanctions against Schuckman included the finding that "the cross-defendants and plaintiff have had continued difficulty in obtaining timely discovery . . . due to the actions of attorney William A. Schuckman." The order then made reference to the dispute surrounding Mr. Regpala's deposition and the ultimate imposition of sanctions on that matter. The current award of sanctions was thus based on a pattern of conduct rather than solely on the single event involving Ms. Regpala's deposition.

We agree that if an attorney continues to engage in dilatory tactics to prevent legitimate discovery a court should be able to consider past conduct in considering the attorney's bad faith on the subsequent occasions. Where, however, subsequent conduct is not the type that warrants the imposition of sanctions, past conduct which has already been considered by a court

cannot justify the imposition of additional sanctions; otherwise an attorney might be punished twice for the very same conduct. Because we have concluded that the mere fact that Schuckman gave legal information to an unrepresented deponent cannot serve as a basis for sanctions, the past conduct which had previously been considered by the court cannot serve as a justification for the current award.

We also reject the Attorney General's contention that the award of attorney's fees should be upheld because of Schuckman's failure to notify Eisenberg of his intent to advise Ms. Regpala concerning the disputed privilege. The Attorney General relies on *In re Marriage of Gumabao* (1984) 150 Cal.App.3d 572 [198 Cal.Rptr. 90], for the proposition that section 128.5 empowers the trial court to award attorney's fees as sanctions against an attorney who fails to take appropriate steps to notify opposing counsel of his inability to appear at a scheduled proceeding. The Attorney General argues that Schuckman should have notified him before the deposition that he was planning to advise Ms. Regpala not to testify; if he had been so advised, Eisenberg argues, he may have been able to resolve the problem before travelling from Sacramento to Stockton for the scheduled deposition.[10]

We acknowledge that there may be some merit to the argument that, although Schuckman claimed not to represent his client's wife, professional courtesy should have compelled him to communicate to Eisenberg his intent to advise Ms. Regpala of the marital privilege. The parties may have resolved the problem without expending the time and money to appear for a deposition only to discover an inability to proceed. However, the trial court did not base the award of attorney's fees on the ground that Schuckman should have given Eisenberg advanced warning. In fact, the court implied that Schuckman had no business discussing Ms. Regpala's interests in any manner because he did not represent her. Moreover, the court's order directing Ms. Regpala to appear at a future deposition, together with its refusal to compel her to answer any question and its assertion that "at the time of the [newly scheduled] deposition she can . . . assert the privilege if she wants to," suggests that the court saw no problem in and of itself with waiting to assert the privilege at the time of the deposition.

We note further that the Attorney General made no attempt to resolve the marital privilege dispute and continue with the deposition. After

---

[10]This is not a situation where an attorney has refused to produce the spouse of a client at a deposition after being served with notice of deposition of "a person for whose immediate benefit an action or proceeding is prosecuted." (Code Civ. Proc., § 2019.) (Compare *Hand v. Superior Court, supra,* 134 Cal.App.3d 436.) Ms. Regpala received her own notice of deposition and subpoena. She appeared at the deposition.

Schuckman informed the deponent of the marital privilege and Eisenberg disputed its applicability, Schuckman asked Eisenberg to comply with the meet-and-confer statutes and inform him of any applicable exceptions to the marital privilege. Eisenberg responded that the privilege was not applicable because "her husband brought a civil action." He then stated that Schuckman did not have the ability to meet and confer because he did not represent the deponent. Eisenberg refused to further discuss the matter.

■ California Rules of Court, rule 339 requires that, prior to filing a motion to compel or limit discovery, the moving party must make a reasonable attempt to resolve the disputed issue with opposing counsel. The meet-and-confer rule is designed "to encourage the parties to work out their differences informally so as to avoid the necessity for a formal order. . . ." (*McElhaney* v. *Cessna Aircraft Co.* (1982) 134 Cal.App.3d 285, 289 [184 Cal.Rptr. 547].)

■ Although rule 339 may not be directly applicable in this case, because Schuckman did not represent the deponent and therefore was not "opposing counsel" in a motion to compel discovery, we do not believe the Attorney General should be relieved of his duty to attempt to resolve the disputed issue and avoid using the court's time and resources. We do recognize that the transcript reveals great animosity between the attorneys. For that reason any attempt by Eisenberg to resolve the issue may have been fruitless. However, by making no attempt to discuss the matter with Schuckman, the Attorney General guaranteed the continuation of the dispute.

The judgment (order awarding expenses and attorneys fees) is reversed.

Blease, Acting P. J., and Sparks, J., concurred.